**EXHIBIT A**

## ASSET TRANSFER AGREEMENT

THIS ASSET TRANSFER AGREEMENT (this "**Agreement**") is entered into on December 29, 2021, with an effective date of August 19, 2021 (the "**Effective Date**"), by and between Celsius Network Limited, a company organized under the laws of England and Wales with Company No. 11198050 and registered address at The Harley Building 77 - 79 New Cavendish Street London, W1W 6XB, United Kingdom ("**Transferor**"), and Celsius Network LLC, a company organized under the laws of Delaware with principal address at 221 River Street, 9th Floor, Hoboken, New Jersey 07030, United States ("**Transferee**").

## RECITALS

WHEREAS, as of the Effective Date, Transferor maintains a democratized reward payment and lending activity which is accessible via a mobile app owned by the Transferor's affiliate (the "**Celsius App**"), where membership provides access to financial services enabling cryptographic assets holders to earn rewards by transferring their cryptographic assets to their Celsius accounts and borrow USD against their cryptographic assets collateral at low interest rates (the "**Business**");

WHEREAS, in June 2021, Transferor learned of certain regulatory limitations and requirements as they relate to the operation of the Business by Transferor with respect to the provision of services to retail users of the Celsius App (the "**Users**");

WHEREAS, Between July 22, 2021 and August 23, 2021 (the "**Transfer Period**"), Transferor offered its Users the ability to transfer their respective services from Transferor to Transferee in order to address such regulatory limitations and requirements (each User that agreed to such transfer, a "**Consenting User**" and collectively, the "**Consenting Users**");

WHEREAS, Transferor has, based on input received from the applicable regulatory bodies in the United Kingdom, and following input and advice of counsel, determined to stop providing services to or contracting with the Consenting Users;

WHEREAS, Transferor, in order to no longer provide services to or contract with the Consenting Users, wishes to transfer the assets and liabilities of the Business that relate specifically to the Consenting Users and which are the subject of regulatory limitations and requirements;

WHEREAS, Transferee is able to operate certain aspects of the Business as they relate to the provision of services to the Consenting Users and Transferee is willing to contract with the Consenting Users in connection with the operation of such certain aspects the Business;

WHEREAS, the Parties hereto shall enter into that certain Loan Agreement substantially in the form attached hereto as Exhibit 2, addressing the lending of certain cryptographic assets related to the Consenting Users between Transferor and Transferee in accordance with the terms and conditions therein;

WHEREAS, in light of the foregoing, Transferor wishes to transfer, and Transferee wishes to accept and assume, certain assets and liabilities of the Business listed on Exhibit 1 hereto (collectively, the "**Transferred Assets and Liabilities**") subject to the terms and conditions set forth herein:

# AGREEMENT

NOW, THEREFORE, in consideration of the mutual and dependent promises set forth herein, the sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

## ARTICLE I
## THE TRANSACTION

I.1    Transfer and Assumption.  Upon the terms and subject to the conditions set forth in this Agreement and effective upon the execution hereof, Transferee shall accept and assume from Transferor, and Transferor shall transfer and assign to Transferee, the Transferred Assets and Liabilities.

I.2    The Consideration for Transferred Assets. The consideration for the Transferred Assets and Liabilities shall be determined according to the arm's length standard as stated in the U.S. Transfer Pricing rules pursuant to Internal Revenue Code §482 and the regulations promulgated thereunder, the 2017 Organization of Economic Cooperation and Development (OECD) Transfer Pricing Guidelines, and any equivalent local tax laws, regulations, and guidelines.

I.3    The Closing. The transfer and assumption of the Transferred Assets and Liabilities hereunder was initiated on July 22, 2021 and completed on August 23, 2021.

I.4    Beneficial Ownership.  The parties hereto agree that, to the extent that legal title and registered ownership of the Transferred Assets and Liabilities are not transferred to Transferee solely by this instrument under applicable law, the parties hereto shall nonetheless treat Transferee as the beneficial owner of the Transferred Assets and Liabilities, as of the Effective Date, for all purposes.

I.5    Further Assurances.  Transferor hereby undertakes to promptly, or as soon as reasonably practicable, transfer the title and registered ownership of the Transferred Assets and Liabilities to Transferee or its nominee(s), as directed by Transferee.  Each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances, and assurances and take such further actions as may be required to carry out the provisions hereof and give effect to the transactions contemplated hereby.

I.6    Fees and Expenses.  Transferee and Transferor shall each be responsible for its own respective fees and expenses incurred in connection with this Agreement and the transactions contemplated hereby.

I.7    Tax Matters.  Transfer, sales, use, registration, documentary, stamp, value-added and similar taxes and fees (including any penalties and interest) incurred in connection with this Agreement and any other related document, if any, shall be borne and paid by Transferee when due, excluding taxes on Transferor's income, gross receipts, capital, property or employees.

CEL_EXAM-00051262

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF TRANSFEREE

Transferee represents and warrants to Transferor as follows:

II.1    Authorization of Agreement.  Transferee has all requisite power, authority and legal capacity to execute and deliver this Agreement and Transferee has all requisite power, authority and legal capacity to perform Transferee's obligations hereunder and to consummate the transactions contemplated hereby.  This Agreement has been duly and validly executed and delivered by Transferee and, assuming the due authorization, execution and delivery by Transferor, this Agreement constitutes a legal, valid and binding obligation of Transferee, enforceable against Transferee in accordance with its terms, subject to applicable bankruptcy, insolvency, moratorium, reorganization or similar laws affecting creditors' rights generally and subject to general equitable principles (regardless of whether such enforceability is considered in a proceeding in equity or at law).

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF TRANSFEROR

Transferor represents and warrants to Transferee as follows:

III.1    Authorization of Agreement.  Transferor has all requisite power, authority and legal capacity to execute and deliver this Agreement and Transferor has all requisite power, authority and legal capacity to perform Transferor's obligations hereunder and to consummate the transactions contemplated hereby.  This Agreement has been duly and validly executed and delivered by Transferor and, assuming the due authorization, execution and delivery by Transferee, this Agreement constitutes a legal, valid and binding obligation of Transferor, enforceable against Transferor in accordance with its terms, subject to applicable bankruptcy, insolvency, moratorium, reorganization or similar laws affecting creditors' rights generally and subject to general equitable principles (regardless of whether such enforceability is considered in a proceeding in equity or at law).

III.2    Title to Transferred Assets and Liabilities.  Transferor has good, valid and marketable title to the Transferred Assets and Liabilities, free and clear of any and all security interests, liens, claims, pledges, encumbrances or other rights or claims of any other person of any kind or any preemptive or similar rights (collectively, "**Encumbrances**").  Upon the execution hereof, Transferee will acquire all of Transferor's right, title and interest in and to, and will have good, valid and marketable title to, the Transferred Assets and Liabilities transferred from Transferor hereunder, free and clear of any and all Encumbrances other than permitted Encumbrances.

## ARTICLE IV
## MISCELLANEOUS

IV.1    Notices.  All notices and other communications given or made in connection with this Agreement shall be in writing and shall be deemed to have been given or made when given or made if such notice or communication is in writing and delivered personally, sent by commercial carrier or registered or certified mail (postage prepaid) or transmitted by facsimile or electronic

3

mail to the parties at the following addresses and numbers (or at such other addresses as shall be furnished by the parties by like notice):

**If to Transferor:**      The Harley Building
77 - 79 New Cavendish Street
London, W1W 6XB
United Kingdom


**If to Transferee:**      221 River Street, 9th Floor
Hoboken, New Jersey 07030
United States

IV.2   <u>Indemnification</u>.

(a)      Transferee agrees to indemnify and hold harmless Transferor, and any of Transferor's representatives and agents, from and against any demands, claims, actions, suits, proceedings, fees and expenses, including reasonable attorneys' fees and expenses, and any other obligations directly or indirectly arising from or related to (i) any breach of any representation or warranty made by Transferee in this Agreement or (ii) any breach by Transferee of any covenant or obligation of Transferee under this Agreement.

(b)      Transferor agrees to indemnify and hold harmless Transferee, and any of Transferee's representatives and agents, from and against any demands, claims, actions, suits, proceedings, fees and expenses, including reasonable attorneys' fees and expenses, and any other obligations directly or indirectly arising from or related to (i) any breach of any representation or warranty made by Transferor in this Agreement; or (ii) any breach by Transferor of any covenant or obligation of Transferor under this Agreement.

(c)      All indemnification payments made under this Agreement shall be treated by the parties as an adjustment to the Purchase Price for tax purposes, unless otherwise required by law.

IV.3   <u>Headings; Entire Agreement; Counterparts; Amendments; Third Party Beneficiaries</u>. The headings contained in this Agreement are inserted for convenience only and do not constitute a part of this Agreement. This Agreement constitutes the entire agreement among the parties hereto and supersedes all other prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the United States federal ESIGN Act of 2000, *e.g.*, www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes. This Agreement may not be amended except by an instrument in writing duly executed by each of the parties hereto. This Agreement is not intended to confer upon any other person other than the parties hereto any rights or remedies hereunder.

4

CEL_EXAM-00051264

IV.4    <u>Waivers</u>.    Neither any failure nor any delay by any party hereto in exercising any right, power or privilege under this Agreement will operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege.

IV.5    <u>Assignment; Successors and Assigns</u>.    No party hereto may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other party hereto.  Subject to the preceding sentence, all of the terms, agreements, covenants, representations, warranties, and conditions of this Agreement are binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns (whether by operation of law or otherwise).  Any assignment in violation of this section shall be null and void.

IV.6    <u>Governing Law</u>.    The validity and interpretation of this Agreement shall be governed by the laws of the State of Delaware, United States, without reference to the conflict of laws principles thereof.

IV.7    <u>Submission to Jurisdiction; Process</u>.    Each party hereto submits to the exclusive jurisdiction of any state or federal court located in the State of New York, in any action, suit or proceeding ("**Action**") arising out of or relating to this Agreement and agrees that all claims in respect of the Action may be heard and determined in any such court.  Each party hereto also agrees not to bring any Action arising out of or relating to this Agreement in any other court.  Each party hereto agrees that a final judgment in any Action so brought will be conclusive and may be enforced by Action on the judgment or in any other manner provided at law or in equity.  Each party hereto waives any defense of inconvenient forum to the maintenance of any Action so brought and waives any bond, surety, or other security that might be required of any other party with respect thereto.  Process in any such Action may be served on any party hereto anywhere in the world, whether within or without the jurisdiction of any such court.

IV.8    <u>Waiver of Jury Trial</u>.    TO THE FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, THE PARTIES HERETO HEREBY WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION, SUIT OR OTHER PROCEEDING BROUGHT TO RESOLVE ANY CLAIM, CONTROVERSY OR DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT, REGARDLESS OF WHICH PARTY INITIATES SUCH ACTION, SUIT OR OTHER PROCEEDING.

IV.9    <u>Drafting</u>.    The parties hereto have participated jointly in the negotiation and drafting of this Agreement and, in the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision of this Agreement.

IV.10    <u>Specific Performance</u>.    The parties hereto shall acknowledge that, in view of the uniqueness of the parties hereto, the parties hereto would not have an adequate remedy at law for money damages in the event that this Agreement were not performed in accordance with its terms,

CEL_EXAM-00051265

and therefore agree that the parties shall be entitled to specific enforcement of the terms hereof in addition to any other remedy to which the parties hereto may be entitled at law or in equity.

IV.11   <u>Severability</u>.  The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision.

*[Signature Page Follows]*

CEL_EXAM-00051266

IN WITNESS WHEREOF, Transferee and Transferor have executed this Agreement as of the date first set forth above.

### TRANSFEROR:

Celsius Network Limited

By: _____

Name:    Alex Mashinsky

Title:    Ceo

### TRANSFEREE:

Celsius Network LLC

By: _____

Name:    Daniel Leon

Title:    COO/President

DocuSign Envelope ID: 93F5A82A-F543-4F56-8156-68366E1F12AC2

## Exhibit 1 – Transferred Assets and Liabilities

Except as otherwise provided, the Transferred Assets and Liabilities are as follows:

     1.     All of Transferor's obligations related to or resulting from the Consenting Users' use of the Celsius App, including any obligation of Transferor to return collateral following repayment of a loan made to a Consenting User, all obligations to repay loans of cryptographic assets made by Consenting Users to Transferor prior to the Effective Date and obligations to pay financing fees (known as "Rewards" on the Celsius App) to Consenting Users in respect of loans made by Consenting Users through the Celsius App.

     2.     The business relationship with the Consenting Users.

     3.     All of Transferor's rights related to or resulting from the balances of the Consenting Users in the Celsius App, including the right to use any collateral used to secure loans to Consenting Users and all cryptographic assets loaned by the Consenting Users to Transferor prior to the Effective Date.

     4.     A copy of the list of Consenting Users and their information.

Notwithstanding the foregoing, the following shall not form a part of the Transferred Assets and Liabilities:

     1.     All rights and obligations of Transferor related to or resulting from the transfer and use of (i) Binance Coin (BNB); (ii) Terra (LUNA); (iii) Ripple (XRP); (iv) Tether Gold (XAUT); or (v) WDGLD by Consenting Users outside of the United States of America.

     2.     Goodwill of Transferor and ownership of and rights related any trademarks, copyrights, patents, applications for any of the foregoing, trade secrets, or similar intellectual property of Transferor.

CEL_EXAM-00051268

**Exhibit 2 – Loan Agreement**

**[attached separately]**

3

CEL_EXAM-00051269