**EXHIBIT B**

**INTERCOMPANY OPERATION and LOAN AGREEMENT**

**THIS INTERCOMPANY LOAN AGREEMENT ("Agreement")** with an effective date of August 19, 2021, is executed;

**BY** and **BETWEEN**:

1. **Celsius Network LLC**, a limited liability company incorporated under the laws of the state of Delaware, U.S.A., with address at 221 River Street, 9th Floor, Hoboken, New Jersey 07030, U.S.A. (the "**Lender**"); and

2. **Celsius Network Limited**, a company incorporated under the laws of England and Wales, Company No. 11198050, with address at The Harley Building, 77 - 79 New Cavendish Street, London, England, W1W 6XB (the "**Borrower**", and together with Assignor, the "**Parties**" and each, a "**Party**").

**WHEREAS** the Lender operates a retail business whereby end-users transfer cryptographic assets to the Lender and receive a certain yield on such cryptographic assets;

**WHEREAS** in order to generate such Yield, the Lender wishes to assign ownership of certain cryptographic assets as stated in this Agreement to the Borrower, thereby allowing Borrower to carry out certain yield generating activities in cryptographic assets with third parties (the "**Purpose**");

**WHEREAS** it is intended that any cryptographic assets loaned by the Lender to the Borrower will be repayable to the Lender upon the Lender's first demand; and

**WHEREAS** the Parties agree to be bound by the terms and conditions of this Loan Agreement ("Agreement") which reflects the understanding and practice of the Parties from the Effective Date.

**NOW THEREFORE** in consideration of the mutual covenants and promises set forth herein, the Parties hereby agree as follows:

**1.**      <u>**Introduction**</u>

1.1.      The preamble to this Agreement constitutes an integral part hereof.

1.2.      The paragraph headings are for the sake of convenience only and shall not affect the interpretation of this Agreement.

1.3.      In this Agreement, words denoting the singular include the plural and vice versa; words denoting any gender include all genders.

**2.**      <u>**The Loan**</u>

2.1.      The Lender hereby loans to the Borrower the cryptographic assets (the "**Assets**") set out in **Schedule "A"** attached hereto (the "**Loan**"). The Parties acknowledge that the Assets also include certain cryptographic assets that belong to Lender's Users, as such term is defined in that certain Asset Transfer Agreement, dated August 19, 2021, by and between the Parties (the "**Asset Transfer Agreement**"), which were not transferred from Borrower to Lender in connection with the transfer of the Transferred Assets and Liabilities (as defined in the Asset Transfer Agreement), and that the Parties wish to include in the Assets covered by this Agreement.

2.2.      The Loan shall be repayable by the Borrower to the Lender upon the Lender's first demand.

2.3.      The Loan is provided by the Lender to the Borrower for the Purpose.

2.4.      The Loan is unsecured.

CEL-UCC-00000059

## 3.    Interest and Spread

3.1.    The Loan shall bear an Interest plus an Applicable Spread, both under Arm's Length Principle (as defined below), as determined by the parties from time to time reflecting market data and market conditions.

3.2.    For the purposes of this Agreement:

3.2.1.    **"Interest"** shall mean an annual interest on the unpaid balance of the Assets (which includes any unpaid accrued interest), compounded and calculated weekly based on a third-party transfer pricing benchmark and determined weekly as being the rate under Arm's Length Principle which would ordinarily be applied in a similar arrangement between unrelated parties, taking in to account the terms of this Agreement and the standing of the Parties.

3.2.2.    **"Applicable Spread"** shall mean a portion of the difference between the Yield of the borrower and Interest over a financial period, adequate to compensate for the functions performed, and risks assumed by the Lender in accordance with accepted Arm's Length Principle and supported where necessary by appropriate transfer pricing documentation.

3.2.3.    **"Arm's Length Principle"** shall mean the consideration which would be applied or proposed to be applied between unrelated parties in remunerating for the same or similar services as the Service.

## 4.    Repayment

4.1.    Borrower may make repayments under the Loan, in whole or in part, at any time by providing at least seven (7) days' prior notice of such repayment to Lender (or such shorter period as to which the Lender may consent). No premium or penalty is payable in respect of any repayment made in accordance with the terms of this Agreement. Any notice of repayment under this Agreement shall be irrevocable.

4.2.    Repayment Details

(a)    Any repayment under this Agreement shall be made by the Borrower to the Lender in the same cryptographic asset (or any other cryptographic asset or Fiat currency as the Parties may agree from time to time).

(b)    Any repayment under this Agreement which is in cryptographic assets shall be transferred to a digital wallet or means as determined by the Lender from time to time.

4.3.    All payments received by Lender under this Agreement shall be applied by Lender: first, to any payments incurred in collection of any unpaid debt from Borrower which has become due and payable; secondly, to the payment of the Interest; and finally, to the reduction of principal.

4.4.    All payments made by Borrower hereunder shall be made without set-off or counterclaim.

4.5.    If a payment hereunder is due on a day which is not a business day, the due date for that payment shall instead be the next business day in the same calendar month (if there is one) or the preceding business day (if there is not). During any extension of the due date for payment of any principal hereunder, the Interest is payable on such principal at the rate prevailing on the original due date.

## 5.    Default

5.1.    Each of the following events or circumstances is an event of default (**"Event of Default"**):

(a)    the Borrower fails to pay any amount due under this Agreement on demand, if so payable and such breach was not remedied within fifteen (15) days;

HIGHLY CONFIDENTIAL

DocuShare Envelope ID: 93F5A82A-F543-4F56-8155-683661F121C2
23-01104-mg    Doc 1-2    Filed 05/01/23    Entered 05/01/23 23:44:05    Exhibit B    Pg
4 of 7

3

(b)     the Borrower fails to observe or perform any of its obligations under this Agreement or under any undertaking or arrangements entered into in connection herewith, other than an obligation of the type referred to in section 5.1(a) above and, in the case of failure that is capable of remedy, which has not been remedied within fifteen (15) days after the Lender becomes aware of such breach by the Borrower;

(c)     a resolution is passed or an order of a court of competent jurisdiction is made that the Borrower be wound up or dissolved (other than for the purposes of a reconstruction, merger or consolidation, the terms whereof having previously been approved by the Lender);

(d)     the Borrower stops payment of its creditors generally or (other than for the purposes of such reconstruction, merger or consolidation as referred to in article 5.1(c) hereof) ceases or admits its wish to cease to carry on business or is deemed unable to pay its debts under applicable law;

(e)     any material assets of the Borrower have been attached by a prejudgment attachment or an executory attachment or similar attachment and such attachment has not been lifted within twenty (20) business days;

(f)     any provision of this Agreement is or becomes, for any reason, invalid or unenforceable; or

(g)     the Borrower undergoes a change of control.

5.2.     On and at any time after the occurrence of an Event of Default, the Lender may serve an immediate notice of default and may simultaneously declare (and in the case of Events of Default occurring under articles 5.1(c) or 5.1(d) shall be deemed to have done so immediately prior to their occurrence) that: (i) any and all of the obligations of the Lender under this Agreement can be cancelled forthwith whereupon this Agreement shall be cancelled forthwith; and (ii) all amounts outstanding under this Agreement shall become immediately due and payable whereupon they shall become so due and payable together with accrued Interest thereon and any other amounts payable under this Agreement.

## 6.     Representations and Warranties

Borrower represents and warrants to Lender that Borrower has full power and authority to execute and deliver this Agreement, to borrow the Loan hereunder, and to incur the obligations provided for herein. No consent or approval of any person or entity, including without limitation any of Borrower's creditors, or any governmental or administrative authority, instrumentality, or agency, is required as a condition to the validity of this Agreement.

## 7.     Taxation

7.1.     All sums payable under the terms of this Agreement will be paid free of any deductions, charges, withholding of taxes or similar unless such deduction or withholding is required by law. To the extent that amounts are so withheld by Borrower, such withheld amounts shall be treated for all purposes of this Agreement as having been paid to the Lender. Any such deductions, charges, withholdings of taxes or similar will remain the sole responsibility of the incurring Party.

7.2.     The Parties intended to enter into this Agreement in line with arm's length terms. In the event that the agreed conditions nonetheless do not comply with the decisive assessment thereof by the applicable tax authorities or the highest tax court, the applicable terms of this Agreement shall be replaced by terms that are in compliance with the aforesaid assessment. Such amended terms will be applicable as of the incurrence of the legal relationship under this Agreement.

7.3.     All amounts payable hereunder including Interest are exclusive of any applicable indirect taxes, including value added taxes or sales taxes, to the extent applicable which will be borne by each party respectively.

HIGHLY CONFIDENTIAL

DocuSign Envelope ID: 93F5A82A-E543-4E56-8155-683661F121C2

## 8.    Miscellaneous

8.1.      Neither Party hereto shall be entitled to assign any of its rights or obligations hereunder except with the prior written consent of the other Party.

8.2.      This Agreement constitutes the entire agreement between the Parties hereto with respect to its subject matter and supersedes all prior agreements with respect to the subject matter hereof between the Parties. No amendment to this Agreement shall be effective unless it is in writing and signed by both Parties.

8.3.      The failure of either Party hereto at any time to require the performance by the other Party of any provision of this Agreement shall not affect in any way the right to require such performance at any later time, nor shall the waiver by either Party of a breach of any provision hereof be taken or held to be an implied waiver of such provision. The rights of Lender hereunder: (i) may be exercised as often as necessary; (ii) are cumulative and not exclusive of its rights under the general law; and (iii) may be waived only in writing and specifically.

8.4.      This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.

8.5.      All notices or other communications under or in connection with this Agreement shall be given in writing to the applicable Party at its registered office as stated herein, and, unless otherwise state herein, may be made by post or facsimile. Any such notice will be deemed to be given as follows: (a) if by post, when delivered personally or on actual receipt; and (b) if by facsimile, when received in legible form. However, a notice given in accordance with the above but received on a non-working day or after business hours in the place of receipt will only be deemed to be given on the next working day in such place.

8.6.      This Agreement shall be construed and governed by the laws of England and Wales.

[Signature page follows]

HIGHLY CONFIDENTIAL                                          CEL-UCC-00000062

*[Signature Page of Intercompany Operation and Loan Agreement]*

**IN WITNESS WHEREOF**, this Agreement has been duly executed on the date first set forth above.


### THE LENDER:

**Celsius Network LLC**

Name.................................
Daniel Leon

Title.................................
COO/President


### THE BORROWER:

**Celsius Network Limited**

Name.................................
Alex Mashinsky

Title.................................
Ceo

Schedule "A"
**The Assets**

*[To be added]*

HIGHLY CONFIDENTIAL